# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

American Family Mutual Insurance
Company,

Case No. 0:17-cv-04463-KMM

Plaintiff,

v.

**ORDER**

Daniel Pilarski, an individual; and
William Reiter, an individual;

Defendants.

This matter is before the Court on American Family Mutual Insurance
Company's ("American Family") Motion for Summary Judgment. [SJ Mot., ECF
No. 32.] The parties have consented to the exercise of jurisdiction by the undersigned
United States Magistrate Judge. [ECF No. 22.] For the reasons that follow, American
Family's motion is granted.

## I.     Background

On July 16, 2016, Daniel Pilarski was visiting a Wisconsin cabin owned by his
friend William Reiter. [Ex. A to the Compl., ECF No. 3-1; Decl. of Dahrim Boulware
("Boulware Decl.") ¶ 4, Ex. B ("Pilarski Statement") at 2, ECF No. 34-2.] Mr. Reiter
and Mr. Pilarski took Mr. Reiter's boat out on the water that day. [Pilarski Statement
at 2.] The boat has an inboard-outdrive motor. [Boulware Decl. ¶ 5, Ex. 3.] When the
two returned to the cabin from the boat ride, they attempted to place the boat back
into Mr. Reiter's boathouse. [Ex. A to Compl.; Pilarski Statement at 2.] To accomplish
this task, Mr. Pilarski operated a motorized boat winch, but he sustained a serious
injury to his left hand in the process of reeling in the boat. [Ex. A to Compl.; Pilarski
Statement at 2–5, 6; Boulware Decl. ¶ 6, Ex. 4 ("Reiter Statement") at 5, ECF No. 34-
4.] When the boat was still about six to eight feet from being fully loaded into the

boathouse and the cable was very tight, Mr. Pilarski's left hand was trapped by the cable as he tried to guide cable onto the winch's spool. [Pilarski Statement at 2–5; Reiter Statement at 4–6.] Ultimately, Mr. Pilarski lost two fingers on his left hand, and suffered serious damage to a third. [Pilarski Statement at 6, 8.] Mr. Pilarski filed a personal injury lawsuit against Mr. Reiter in Ramsey County District Court (the "underlying action"), alleging that Reiter's negligence caused the injuries. [Ex. A to Compl.]

Mr. Reiter tendered the defense of the underlying action to American Family, with which he has a Wisconsin Homeowners Policy.[1] [Compl. ¶¶ 14–15, ECF No. 3.] American Family agreed to defend Mr. Reiter, but strictly reserved its rights. [*Id.* ¶ 15.] American Family seeks a declaratory judgment that an exclusion in Mr. Reiter's policy applies, meaning it has no duty to defend or indemnify Mr. Reiter for any losses suffered by Mr. Pilarski. [*Id.* ¶¶ 19–21.]

Mr. Reiter's American Family policy covers "compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by [the] policy." [Boulware Decl. ¶ 3, Ex. 1 ("AF Policy") at 9[2].] American Family is also required to provide a defense at its expense if a suit is brought against Mr. Reiter. [AF Policy at 9.] As defined in the AF Policy, an "occurrence" includes an accident that results in bodily injury. [AF Policy at 2.] And "bodily injury" includes "bodily harm." [AF Policy at 1.] American Family also agreed to pay the medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury to a person on the covered property with

---

[1]    American Family represents that Mr. Reiter's boat was also insured by a watercraft policy issued by Progressive Insurance. Mr. Reiter tendered defense to Progressive Insurance, which accepted Mr. Reiter's defense and indemnification without reservation. [Pl.'s Mem. at 3 n.1, ECF No. 33.]

[2]    The Court cites to the original pagination reflected at the bottom of each page of the AF Policy.

permission of the insured. [AF Policy at 9.] None of these portions of the AF policy are in dispute.

However, there are several provisions in Mr. Reiter's homeowner's policy that exclude coverage for certain types of personal liability and medical expenses. One of these personal liability and medical expense exclusions applies to watercraft. It reads:

> 19. **Watercraft.**
>     a. **We will not cover bodily injury** or **property damage** arising out of the ownership, supervision, entrustment, maintenance, operation, use, loading or unloading of a watercraft:
>         (1) with inboard or inboard-outdrive motor power owned by any **insured;**
>         (2) with inboard or inboard-outdrive motor power of more than 50 horsepower rented to any **insured;**
>         (3) that is a sailing vessel, with or without auxiliary power, 26 feet or more in length owned by or rented to any **insured;**
>         (4) that is an iceboat, airboat, air cushion or similar type of craft; or
>         (5) powered by one or more outboard motors with more than 50 total horsepower, owned by any **insured.**
>     This exclusion does not apply while such crafts are stored on the **insured premises** nor to **bodily injury** to any **domestic employee** arising out of and in the course of employment by any **insured.**

[AF Policy at 12.] The dispute between American Family and Mr. Pilarski in this declaratory judgment action centers on this exclusion.

## II.    Discussion

American Family asserts that it is entitled to summary judgment on its declaratory judgment claim because the watercraft exclusion plainly and unambiguously applies to the accident at issue here. Specifically, American Family argues that the undisputed facts show Mr. Pilarski sustained a bodily injury arising out of the loading of a watercraft with an inboard-outdrive motor that was owned by its insured, Mr. Reiter. [Pl.'s Mem. at 6–10.]

### A.    Summary Judgment Standard

Summary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 322. When the moving party properly supports a motion for summary judgment, the nonmoving party must present admissible evidence showing that specific facts exist creating a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Wingate Cnty. Sch. Dist., No. 34*, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

### B.    Interpretation of Insurance Contracts

"Under Minnesota law,[3] interpretation of an insurance policy is a question of law." *Metro. Prop. & Cas. Ins. Co. v. Marti*, 162 F. Supp. 3d 868, 876 (D. Minn. 2016) (internal quotations and alterations omitted). "Provisions in an insurance policy are to be interpreted according to both 'plain, ordinary sense' and 'what a reasonable person in the position of the insured would have understood the words to mean.'" *Farmers Home Mut. Ins. Co. v. Lill*, 332 N.W.2d 635, 637 (Minn. 1983) (quoting *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977)). A provision in an insurance contract that is unambiguous is given its plain and ordinary meaning. *Lobeck v. State Farm Mut. Auto Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). But "a policy provision is ambiguous if it can reasonably be given more than one meaning on the basis of its language alone." *In re SRC Holding Corp.*, 545 F.3d 661, 666 (8th Cir. 2008) (citing *Am. Commerce Ins. Brokers, Inc. v. Minn. Mut. Fire & Cas. Co.*, 551 N.W.2d

---

[3]    Though the parties disagree whether there are any genuine issues of material fact regarding the applicability of the watercraft exclusion, they do agree that Minnesota law applies to this dispute. This is a diversity jurisdiction case, so the Court applies Minnesota law. *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999).

224, 227 (Minn. 1996)). "However, the court 'guard[s] against invitations to find ambiguity where none exists.'" *Friedberg v. Chubb & Son, Inc.*, 832 F. Supp. 2d 1049, 1057 (D. Minn. 2011) (quoting *Metro. Prop. & Cas. Ins. Co. v. Jablonske*, 722 N.W.2d 319, 324 (Minn. Ct. App. 2006)).

Ordinarily when analyzing a coverage dispute, "the insured bears the initial burden of demonstrating coverage." *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). If the insured does so, the insurer has the burden to prove that an exclusion applies. *Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986). That exclusion must be construed in the context of the policy as a whole, *Bobich v. Oja*, 104 N.W.2d 19, 24–25 (Minn. 1960), but ambiguous language in an exclusion "will be construed against the insurer, as drafter of the contract," *Travelers*, 718 N.W.2d at 894. "If the insurer demonstrates that an exclusion applies, the insured bears the burden of proving an exception to the exclusion." *Friedberg v. Chubb & Son, Inc.*, 832 F. Supp. 2d 1049, 1057 (D. Minn. 2011) (citing *SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 314 (Minn. 1995)).

## C.    The Watercraft Exclusion

American Family asserts that coverage in this matter is precluded by several provisions in the watercraft exclusion in Mr. Reiter's insurance policy. Although the Court disagrees that the primary provision on which American Family relies, the "loading or unloading" language, supports a finding of no coverage, other provisions squarely apply.

*"Loading or Unloading of a Watercraft"*[4]

First, American Family invokes the phrase "loading and unloading of a watercraft" from the watercraft exclusion to support its position. American Family argues that the phrase plainly and unambiguously refers to situations in which the boat itself is the object being placed into or onto something else. Under this interpretation, American Family asserts that it is entitled to summary judgment because there is no dispute that Mr. Pilarski's bodily injury arose out of the loading of Mr. Reiter's boat into the boathouse. Mr. Pilarski disagrees, asserting that either the phrase plainly refers to placing cargo into or onto a boat, or, at most, is ambiguous.

At the outset, the Court notes that Mr. Pilarski's proposed reading of "loading or unloading of a watercraft" is consistent with the way courts in other jurisdictions have treated the phrase. *See Sass v. Acuity*, 765 N.W.2d 582, 589–90 (Wis. App. 2009) ("For our purposes, we are satisfied, as was the trial court, that the ordinary and reasonable construction of the 'loading and unloading' language of the watercraft form is to provide coverage for the loading and unloading *of the boat with persons or objects,* not the loading or unloading of the boat onto or off of another vehicle."); *Toll Bridge Authority v. Aetna*, 773 P.2d 906, 908–09 (Wash. 1989) (concluding that insurance policy with provision that it "does not apply to the . . . unloading of any watercraft" excluded coverage for injuries sustained while passengers were disembarking plaintiff's ferry); *Lee & Palmer, Inc. v. Employers Commercial Union Ins. Co., Inc.*, 360 F. Supp. 654, 657 (S.D.N.Y. 1973) (concluding that an exclusion of coverage

---

[4]     American Family does not argue that it is entitled to summary judgment because the insured could not demonstrate a prima facie case of coverage under the Policy. Indeed, the AF Policy appears to provide coverage for bodily injury that results from an accident by a person lawfully on the insured premises. The parties also do not appear to dispute that Mr. Reiter's boat is a type of watercraft that is listed in the watercraft exclusion. Therefore, the Court considers first whether American Family has shown that there is no genuine issue of material fact concerning the application of the watercraft exclusion.

*(footnote continued on next page)*

for property damage arising out of the loading or unloading of a boat did not include the insured's securing and lashing services, which did not involve the act of putting cargo on board the vessel). This precedent suggests that in its plain and ordinary sense, the "loading and unloading of a watercraft" refers primarily to the act of putting things in a boat, rather than putting a boat into or out of storage.

American Family asserts that the Court should reject these non-binding decisions because they rely on a special maritime definition of "load" that is inapplicable in the context of a homeowner's policy.[5] The Court disagrees with this attempt to distinguish the relevant caselaw. Ordinary recreational boat users place passengers, personal belongings, fishing or sporting equipment, or food and drink into their vessels at least as frequently as they place them on trailers, lifts, or into boathouses. A reasonable person in the position of the insured under the AF Policy could readily read the watercraft exclusion and conclude that American Family intends to limit its exposure for bodily injuries that might occur from those common, but potentially risky acts.

Even if the Court disagreed that Mr. Pilarski's reading were the more persuasive one, it would have to find that, at a minimum, the phrase "loading or unloading of a watercraft" is ambiguous because it can reasonably be given more than one meaning based on its language alone. To "load" something means "to put (something) into or onto a structure or conveyance: *loading grain onto a train*" or "to put something into or onto (a structure or conveyance): *loaded the tanker with crude oil.*" *Load,* The American Heritage Dictionary of the English Language, p. 1028 (5th ed. 2011); *see also* Merriam-Webster, *Load,* https://www.merriam-

---

[5]    In its reply, American Family argues that "[t]he common homeowner with a typical homeowner's policy, as is the case here, would generally use their watercraft for recreational, rather than commercial, purposes. As such the activity of 'loading' the boat as a homeowner has a broader, more meaningful association than in a commercial context, for example, in the context of placing the boat itself on a trailer or boathouse track, rather than in 'plac[ing] a . . . large quantity' of cargo on the boat itself." [Pl.'s Reply at 4, ECF No. 41.]

webster.com/dictionary/load (accessed June 14, 2018). Therefore, the loading or unloading of a watercraft can reasonably refer to the act of placing the boat itself onto a lift or a trailer (placing the watercraft on a means of conveyance). In this sense, as American Family argues, the boat itself would be the load placed in a boat house, on a lift, or on a trailer. But as explored above, the loading and unloading of a watercraft can also reasonably refer to placing items into and removing items from a boat's storage areas or passenger compartment (putting a load in or on the watercraft). In this sense, the policy can reasonably be understood to exclude coverage for bodily injuries arising out of the act of placing items into and out of a boat. Because it has two distinct meanings, both of which are arguably reasonable in context, the phrase is ambiguous and must be construed against American Family, which drafted the policy.

At the hearing, American Family suggested that that if the term "loading" can reasonably be understood to refer to both interpretations, American Family should get the benefit of both and exclude coverage for injuries that occur while someone is placing items in the boat and those which occur while placing the boat onto something else. But the law does not allow this "heads I win, tails you lose" analysis. Certainly, under Minnesota law, not all terms with multiple meanings are ambiguous in context. "Because a word has more than one meaning does not mean it is ambiguous. The sense of a word depends on how it is being used; only if more than one meaning applies within that context does ambiguity arise." *Bd. of Regents of Univ. of Minnesota v. Royal Ins. Co. of Am.*, 517 N.W.2d 888, 892 (Minn. 1994) (concluding that although "sudden" could mean both "unexpected" and "something that happens abruptly," it was not ambiguous because the context in which the term was used suggested only the latter was intended). Here, however, it is precisely within the context of the watercraft exclusion that two distinct meanings arise in this case. American Family, which wrote the AF Policy, could have readily drafted it to explicitly cover both meanings, but it failed to do so. It cannot be that in the face of a clearly ambiguous phrase, American Family gets the benefit of both possible readings absent clear intent in the policy. Therefore, American Family's argument is not

supported by Minnesota law, the term is ambiguous, and that ambiguity must be construed against the insurer. *Travelers*, 718 N.W.2d at 894.

Because "loading . . . of a watercraft" is ambiguous, American Family is not entitled to judgment as a matter of law on its claim that this phrase in the AF Policy excludes coverage for Mr. Pilarski's injury. Unfortunately for Mr. Pilarski, this conclusion does not end the Court's analysis.

### Other Language in the Watercraft Exclusion

American Family next argues that the watercraft exclusion unambiguously excludes coverage for the bodily injury sustained by Mr. Pilarski because the policy also "will not cover bodily injury . . . arising out of the ownership, supervision, entrustment [or] use . . . of a watercraft" under the exclusion. [Pl.'s Reply at 2–3.][6] American Family contends that each of these four concepts excludes coverage for Mr. Pilarski's injuries. The Court agrees that the exclusion for injuries arising out of the "ownership . . . of a watercraft" plainly and unambiguously applies in this case. The exclusion for injuries arising out of the "use . . . of a watercraft" also plainly applies.

The Court first notes that the "arising out of" language preceding each of the terms listed in the watercraft exclusion has a broad application. Minnesota courts have held that such language in insurance contracts means "originating from," or "having its origins in," "growing out of," or "flowing from." *See Associated Indep. Dealers, Inc. v. Mut. Serv. Ins. Cos.*, 229 N.W.2d 516, 518 (Minn. 1975); *see also Rausch v. Beech Aircraft*

---

[6]     At the hearing on the motion for summary judgment, counsel for Mr. Pilarski stated that no surreply was necessary to respond to these additional arguments raised by American Family in its Reply brief. Counsel for Mr. Pilarski also stated that the opportunity to present argument at the hearing on these issues eliminated any prejudice that might have arisen from American Family's presentation of matters for the first time in the Reply brief. Based on these statements, the Court will consider American Family's additional arguments about language other than "loading or unloading" in analyzing the motion for summary judgment.

*Corp.*, 277 N.W.2d 645 (Minn. 1979) (concluding that an exclusion of insurance coverage for losses "arising out of" the use of an aircraft meant that the insurer was not required to indemnify the insured for costs incurred as a result of personal injury lawsuits following a plane crash). When read in context in the AF Policy, "arising out of" leads to an expansive reading of the words that follow it.

The Court also looks to the ordinary meaning of the terms "ownership" and "use" to determine the scope of the watercraft exclusion's application. "Ownership" means "the state or fact of being owned," and to "own" means "to have or possess as property" or "to have control over." *Ownership* & *Own*, The American Heritage Dictionary of the English Language at 1260. To "use" something means to "to put [it] into service or employ for a purpose." *Id.* at 1907.

Together with the "arising out of" language, the ordinary meanings of "ownership" and "use" create broad exclusions for incidents related to boats. First, under the "arising out of ownership . . . of a watercraft" language, American Family excluded coverage for perhaps the broadest range of watercraft-related accidents. A reasonable person in the position of the insured would understand that pursuant to the watercraft exclusion, American Family does not cover bodily injury that originates from, has its origins in, grows out of, or flows from possessing a boat as property or having control over the boat (ownership). There is no genuine dispute here that Mr. Pilarski's injuries flowed from Mr. Reiter's possession of or control over the boat. If Mr. Reiter had not owned the boat, he and Mr. Pilarski would not have taken it out on the water and would not have been placing it back into the boathouse, which is when Mr. Pilarski's hand injuries occurred. *See Laborde v. Deblanc*, 587 So. 2d 58, 59–60 (La. Ct. App. 1991) (concluding the deaths of two individuals from inhalation of carbon monoxide fumes from a generator aboard a boat arose out of the previous owner's ownership of the boat because if he "never owned [the boat], he would not have had the generator installed on the watercraft, would not have sold the watercraft to the Labordes, and the Labordes would not have a claim against him for these damages"); *see also Flood v. U.S. Fidelity and Guaranty Co.*, 440 N.Y.S.2d 456, .458 (N.Y.

Sup. Ct. 1981) (concluding that watercraft exclusion precluded coverage where a third-party was allegedly injured on or near a boat that was being kept in dry dock on top of a trailer on the insured's neighbor's property and observing that "injury caused by the . . . watercraft . . . is not covered by the policy, irrespective of whether the watercraft is being operated or used, powered or not [because] [a]ll that is necessary is that the injury arise out of the ownership, maintenance, operation, use, loading or unloading of an excluded boat").

A reasonable person reading the watercraft exclusion would also understand that American Family does not cover bodily injuries that originate from, have their origins in, grow out of, or flow from putting a boat into service or employing it for a purpose (use). Mr. Pilarski's injuries originated from, had their origins in, grew out of, or flowed from the employing the boat for a ride. Mr. Pilarski and Mr. Reiter undisputedly took the boat out on the water shortly before Mr. Pilarski was injured. [Pilarski Statement at 2 (discussing taking a "boat ride").] A reasonable insured would understand that the accident that injured Mr. Pilarski's hand flowed from that boat ride even though he and Mr. Reiter were returning the watercraft to the boathouse at the time his injury occurred. *See Pioneer State Mut. Ins. Co. v. Dells*, 836 N.W.2d 257, 263–64 (Mich. Ct. App. 2013) (applying Michigan law and concluding that exclusion in homeowner's policy for injuries arising out of the use of a motor vehicle precluded coverage for an accident in which a trailer being towed by a van detached and collided with a third-party's vehicle; "Absent the use of the van to connect to and tow the trailer that early October day, there would have been no bodily injury."); *cf. Westfield Ins. Co. v. Vandenburg*, 796 F.3d 773, 781–83 (7th Cir. 2015) (applying Illinois law and concluding Mr. Vandenberg's injuries sustained when he fell from the top deck of a yacht after a bench on which he was sitting tipped over came under an insurance policy's watercraft exclusion for bodily injury "arising out of the ownership, maintenance, use or entrustment to others of any . . . watercraft owned or operated by or rented or loaned to any insured").

11

Mr. Pilarski suggests that there is a genuine issue of material fact as to the cause of the injury that precludes summary judgment. He contends that a jury could find his injuries were caused by the winch rather than the boat, making summary judgment inappropriate. [*See* Def.'s Resp. at 6.] Essentially he argues that if the winch caused the accident, the boat did not, and therefore the exclusion does not preclude coverage. Mr. Pilarski reads the watercraft exclusion too narrowly and unnecessarily injects the concept of proximate cause. As a matter of law, the watercraft exclusion in the AF Policy precludes coverage where a bodily injury originates from, has its origins in, grows out of, or flows from the ownership or use of a watercraft, regardless of the immediate cause of the injury. Even though the winch played a critical role in the injury, the relationship between the use of the boat and the injury he suffered "need not be a proximate cause in the strict legal sense." *See Assoc. Indep. Dealers*, 229 N.W.2d at 518; *see also W3i Mobile, LLC v. Westchester Fire Ins. Co.*, 2009 WL 3379198, at *3 (D. Minn. 2009) ("The term 'arising out of' requires only a causal connection; it does not require proximate cause.") (quoting *Ross v. City of Minneapolis*, 408 N.W.2d 910, 912 (Minn. Ct. App. 1987)). Here, the undisputed facts show that to the extent the winch was a factor in causing Mr. Pilarski's injuries, it operated inextricably with the use and the ownership of the boat.[7]

---

[7]   Mr. Pilarski points to no facts to suggest that negligence regarding the winch was "divisible from the ownership and use of the" boat itself. *See Austin Mut. Ins. Co. v. Klande*, 563 N.W.2d 282, 285 (Minn. Ct. App. 1997) (concluding that exclusion in homeowner's policy for bodily injury arising out of the ownership and use of a motorized vehicle precluded coverage where the plaintiff claimed that negligent supervision of a child caused the child to be burned when a motorcycle fell over onto the child's leg, resulting in burns from the hot muffler); *Midwest Family Mut. Ins. Co. v. Schmitt*, 651 N.W.2d 843, 846–49 (Minn. Ct. App. 2002) (concluding that homeowners policies with exclusions for personal injury "arising out of the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances" precluded coverage for injuries that occurred while the insured attempted to relocate a car with a motorized crane by wrapping an allegedly defective chain through the vehicle's windows; "Without the use of the motorized crane, which operated together with the chain to lift the car, Olene would not have been injured.").

### D.    The Exception to the Watercraft Exclusion

Mr. Pilarski argues that American Family is not entitled to summary judgment because, even if the watercraft exclusion would otherwise apply, an exception to the exclusion controls. That exception states: "[t]his exclusion does not apply while such craft are stored on the insured premises nor to bodily injury to any domestic employee arising out of and in the course of employment by an insured." [AF Policy at 12.] Mr. Pilarski asserts that the exception to the exclusion mandates coverage because he and Mr. Reiter were storing the boat at the time he sustained the injuries to his hand. [Def.'s Resp. at 7–9.]

The key phrase here states that the exclusion does not apply "*while* such craft are stored on the insured premises." (emphasis added). The Court concludes that a reasonable person in the position of an insured could only understand this language in the exception to apply where the watercraft in question is already stored at the time of the accident.[8] Mr. Pilarski's proposed reading ignores the exception's plain meaning and seeks to apply the exception where the boat is in the process of being put away or moved into storage. This argument essentially asks the Court to rewrite the AF Policy, which the Court cannot do.

Mr. Pilarski attempts to avoid summary judgment by again asserting that there is a fact dispute, this time, one that relates to the storage exception. Mr. Pilarski asserts that the parties disagree regarding whether any part of the boat was still in the water at the time of the accident. [Def.'s Resp. at 9.] The undisputed facts here show that Mr. Pilarski's hand injury occurred when the boat was six-to-eight feet from the winch pulling it fully onto the track and into the boathouse [Reiter Statement at 6], but the record does not clearly demonstrate whether some portion of the boat was still in the water.

---

[8]     There is no showing in the record that Mr. Pilarski could have been acting as a domestic employee for Mr. Reiter or was acting during such employment, so the portion of the exception applicable to a domestic employee is inapplicable here.

Unfortunately for Mr. Pilarski, whether the boat was partially in or completely out of the water is not a material fact, so any disagreement about this issue does not preclude summary judgment. The relevant language in the exception to the exclusion restores coverage only for injuries that occur "while the craft is stored on the insured premises." Even if the boat was completely out of the water as Mr. Pilarski contends, but still being winched into the boat house, the undisputed factual record demonstrates that his injury did not occur while the boat was actually stored; how much distance the boat had travelled from the water is irrelevant. Given the plain language of the exception, it is not necessary to have a jury determine whether the boat was still partially in the water or completely out of the water, and summary judgment is not precluded.

## III.  Order

For the reasons stated above, **IT IS HEREBY ORDERED THAT**:

1. American Family's Motion for Summary Judgment **[ECF No. 32]** is **GRANTED**.

2. To the extent any "bodily injury" caused by an "occurrence" is alleged in the Underlying Litigation, the "bodily injury" arouse out of the ownership or use of a watercraft, and therefore, coverage is excluded under Exclusion 19 of the Policy.

3. Pursuant to the terms and conditions of the Policy issued by American Family there is no coverage and American Family has no duty to defend or indemnify William Reiter for the injuries alleged by Daniel Pilarski in the Underlying Litigation.

**Let Judgment be entered accordingly**.

Date: June 28, 2018                              *s/Katherine Menendez*
                                                 Katherine Menendez
                                                 United States Magistrate Judge